```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                   AT CHARLESTON
```

JACKIE MCCUTCHEON,

    Plaintiff

v.                                    Civil Action No. 2:07-0622

ALCAN ROLLED PRODUCTS-
RAVENSWOOD, LLC, LADONNA SMITH,
MICHAEL WITT, M.D.,
CHD MERIDIAN HEALTHCARE, LLC,
and I-TRAX, INC.,

    Defendants

## MEMORANDUM OPINION AND ORDER

Pending is plaintiff's motion to remand this action as improvidently removed, filed October 12, 2007.

### I. Background

Plaintiff Jackie McCutcheon sustained an on-the-job injury to his left shoulder on or about November 18, 2004, and filed a workers' compensation claim based on this incident. (Compl. ¶¶ 8-9).  He underwent surgery on June 10, 2006, and was released to return to work as of January 10, 2007, with some work related restrictions.  (Id. ¶¶ 10-12).  Plaintiff's shoulder surgeon, Dr. Seon, restricted plaintiff's lifting to ten pounds for three months following his return to work.  (Id. ¶ 12).

Defendant Michael Witt, M.D., the plant doctor at the Ravenswood facility, ordered a functional capacity evaluation ("FCE"), pursuant to the terms of a collective bargaining agreement ("CBA"), and based on the results of the evaluation, restricted plaintiff's lifting from zero to forty-five pounds depending on the positional aspect of the lifting. (Id. ¶¶ 13-14).

Dr. Witt issued a physical capacities report on January 4, 2007, which noted that the plaintiff was restricted from any lifting greater than forty-five pounds. (Id. ¶ 15). Plaintiff notes that the report did not conform to either the restrictions identified in the FCE or by Dr. Seon. (Id.). Plaintiff alleges that the defendants ignored the recommendation in the FCE that the plaintiff undergo a work hardening program before returning to work. (Id. ¶ 16). Additionally, plaintiff contends that on February 2, 2007, Dr. Witt formally released plaintiff of all restrictions on his work activities in direct contradiction with both the FCE and the recommendations of Dr. Seon. (Id. ¶ 17).

Plaintiff was assigned to a position that required regular lifting of seventy pounds or more as of January 29, 2007. (Id. ¶ 18). Shortly thereafter, he informed Dr. Witt that his new work duties were straining his left shoulder and that he did not feel he should continue to perform such duties because of the

2

significant risk of re-injuring his left shoulder.  (Id. ¶ 19). Plaintiff alleges that Dr. Witt made no effort to accommodate his concerns and directed him to remain in this position without restriction.  (Id.).

Plaintiff instituted this action in the Circuit Court of Jackson County on August 30, 2007, alleging claims under the West Virginia Human Rights Act and the West Virginia Workers' Compensation Act.  Specifically, he asserts that the defendants failed and refused to accommodate his handicap, retaliated against him for requesting an accommodation, and retaliated against him for filing a workers compensation claim.  (Id. ¶¶ 22-23).  His complaint expressly disclaims any claims arising under federal law.  (Id. ¶ 24).

Defendants Alcan Rolled Products-Ravenswood, LLC, and LaDonna Smith removed the action with the consent of the other defendants on October 4, 2007 on the grounds that plaintiff's claims were completely preempted by Section 301 of the Labor Management Relations Act ("LMRA").  (Notice of Removal ¶¶ 10-11). Defendants note that the hourly production and maintenance employees at the Ravenswood facility are unionized and that the terms and conditions of employment for the unionized workforce are governed by a CBA, which contains a provision addressing how

3

to place an employee in a job position when the employee has either a temporary or a permanent physical capacity restriction. (Id. ¶¶ 5-7). Defendants assert that plaintiff's claims require interpretation of the CBA, and thus, are completely preempted by the LMRA. (Id. ¶ 10).

## II. Governing Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Title 28 U.S.C. § 1441(a) governs federal removal jurisdiction and provides as follows:

> [a]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the . . . defendants . . . to the district court of the United States for the district and division embracing the place where such action is pending. . . .

28 U.S.C. § 1441(a).

The burden of establishing removal falls upon the removing party. Mulcahey v. Colum. Organic Chem. Co., 29 F.3d 148, 151 (4th Cir. 1994). Our court of appeals has observed time and again that it is obliged to construe removal jurisdiction

4

strictly:

> We have noted our obligation "to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated" by it. Maryland Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005) (quoting Mulcahey, 29 F.3d at 151). . . . Consistent with these principles, we have recognized that state law complaints usually must stay in state court when they assert what appear to be state law claims. See, e.g., Harless v. CSX Hotels, Inc., 389 F.3d 444, 450 (4th Cir. 2004); King, 337 F.3d at 424; Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 186 (4th Cir. 2002); Cook v. Georgetown Steel Corp., 770 F.2d 1272, 1274 (4th Cir. 1985).

Lontz v. Tharp, 413 F.3d 435, 440 (4th Cir. 2005). "Any doubts concerning the propriety of removal must be resolved in favor of retained state court jurisdiction." Marshall v. Manville Sales, Corp., 6 F.3d 229, 232 (4th Cir. 1993).

Inasmuch as neither party has alleged diversity of citizenship, the source of jurisdiction at issue here is 28 U.S.C. § 1331, which provides "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Removal is appropriate if the face of the complaint raises a federal question. Lontz, 413 F.3d at 439.

Our court of appeals recently elaborated on this point by discussing the longstanding well-pleaded complaint rule:

> In determining whether a plaintiff's claim arises under

5

> federal law, we apply the well-pleaded complaint rule, which holds that courts "ordinarily . . . look no further than the plaintiff's [properly pleaded] complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331." Custer v. Sweeney, 89 F.3d 1156, 1165 (4th Cir. 1996).  Thus, in examining the complaint, our first step is to "discern whether federal or state law creates the cause of action." Mulcahey, 29 F.3d at 151; see also Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) ("The vast majority of lawsuits 'arise under the law that creates the cause of action.' ") (quoting Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916).).  If federal law creates a plaintiff's claim, then removal is proper.  Mulcahey, 29 F.3d at 151.  The general rule, of course, is that a plaintiff is the "master of the claim," and he may "avoid federal jurisdiction by exclusive reliance on state law" in drafting his complaint.  Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th Cir. 2005).

The Supreme Court has recognized a narrow exception to the well pleaded complaint rule known as the complete preemption doctrine.  Caterpillar, 482 U.S. at 393.  Under this doctrine, removal is appropriate if "the subject matter of a putative state law claim has been totally subsumed by federal law – such that state law cannot even treat on the subject matter."  Lontz, 413 F.3d at 439-40.  When complete preemption exists, federal law provides the exclusive cause of action, and in essence "there is . . . no such thing as a state-law claim."  Id. at 440 (quoting Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 11 (2003)).  "The

6

doctrine of complete preemption thus prevents plaintiffs from 'defeat[ing] removal by omitting to plead necessary federal questions.'"[1] Id. (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 22 (1983)).

To prove complete preemption, "a defendant must establish that the plaintiff has a 'discernible federal [claim]'

---

[1] The doctrine of complete preemption is starkly different from the defense of federal conflict or ordinary preemption. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987); Pinney, 402 F.3d at 449. "Under ordinary or conflict preemption, 'state laws that conflict with federal laws are preempted, and preemption is asserted as a federal defense to plaintiff's suit.'" Sonoco Prods. Co. v. Physicians Health Plan Inc., 338 F.3d 366, 370-71 (4th Cir. 2003). Further describing conflict or ordinary preemption, the Fourth Circuit has explained:

> The absence of a federal cause of action says nothing about whether the state claim is preempted in the ordinary sense: it is entirely within the power of Congress to completely eliminate certain remedies by preempting state actions, while providing no substitute federal action. But in such cases, preemption serves only as a federal defense, the barred claims are not completely preempted, and thus not removable to federal court.

King v. Marriott Int'l, 337 F.3d 421, 425 (4th Cir. 2003). A case cannot be removed pursuant to section 1331 solely on the basis of federal conflict or ordinary preemption defenses but can be removed if the complete preemption doctrine applies. Pinney, 402 F.3d at 449; King, 337 F.3d at 425; Abbot v. Am. Cynamid Co., 844 F.2d 1108, 1111 (4th Cir. 1988). It is important to note the federal preemption defense may still be properly raised in state court if the complete preemption doctrine is found not to be present and remand is appropriate. See e.g. Caterpillar, Inc., 482 U.S. at 397; King, 337 F.3d at 425.

7

and that 'Congress intended [the federal claim] to be the exclusive remedy for the alleged wrong.'" Pinney, 402 F.3d at 449 (citing King, 337 F.3d at 425). Here, the defendants rely on § 301 of the LMRA, which is one of only three statutes in which the Supreme Court has found a Congressional intent to create an exclusively federal remedy. See Beneficial, 539 U.S. at 10-11 (National Bank Act); Metro. Life, 481 U.S. at 66-67 (ERISA § 502(a)); Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists, 390 U.S. 557, 560 (1968) (LMRA § 301).

>     Section 301 of the LMRA provides in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185. The Supreme Court has held that this statute announces a federal policy of ensuring uniform interpretation of CBAs in order to "promote the peaceable, consistent resolution of labor-management disputes." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404 (1988).

Section 301 will preempt a state law claim if resolution of the state claim is "inextricably intertwined with

consideration of the terms of the labor contract" or when application of state law to a dispute "requires the interpretation of a collective bargaining agreement." Lingle, 486 U.S. at 413; Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985). Section 301 does not "pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." Livadas v. Bradshaw, 512 U.S. 107, 123 (1994). Rather, "it is the legal character of a claim, as 'independent' of rights under a collective-bargaining agreement, . . . that decides whether a state cause of action may go forward." Id. at 123-24.

In Lingle, much as here, the plaintiff asserted a claim under Illinois law for retaliatory discharge for filing a workers' compensation claim. Lingle, 486 U.S. at 401. The Supreme Court began by identifying the elements of such a claim under Illinois law. Id. at 407. The court noted that a plaintiff must offer evidence from which it may be inferred that "(1) he was discharged or threatened with discharge and (2) the employer's motive in discharging him was to deter him from exercising his rights under the [Illinois Workers Compensation] Act or to interfere with his exercise of those rights." Id. The court then observed that each of these elements amounted to a purely factual question pertaining to the conduct of the employee

9

and employer and the motive of the employer, and that neither element required the court to interpret any term of the CBA.  Id.  On these grounds the court concluded, "the state-law remedy in this case is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement."  Id.

The Supreme Court cautioned that mere "parallelism" between the facts and issues to be addressed under a state law claim and those to be addressed under § 301 does not "render[] the state-law analysis dependent upon the contractual analysis."  Id. at 408-09 (observing that the CBA contained a just cause provision under which the employer's conduct may also be challenged and that an analysis under the just cause provision would likely entail the same factual considerations as an analysis under the state workers' compensation law).  The court explained:

> For while there may be instances in which the National Labor Relations Act pre-empts state law on the basis of the subject matter of the law in question, § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements.  In other words, even if dispute resolution pursuant to a collective-bargaining

10

>agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

Id. at 408-410 (internal footnotes omitted).

### III. Discussion

In analyzing the elements of the state law claim brought here under the West Virginia Human Rights Act, a plaintiff asserting a claim for failure to accommodate a handicap must demonstrate:

>(1) The plaintiff is a qualified person with a disability; (2) the employer was aware of the plaintiff's disability; (3) the plaintiff required an accommodation in order to perform the essential functions of a job; (4) a reasonable accommodation existed that met the plaintiff's needs; (5) the employer knew or should have known of the plaintiff's need and of the accommodation; and (6) the employer failed to provide the accommodation.

Skaggs v. Elk Run Coal Co., Inc., 198 W. Va. 51, 58 syl. pt. 2, 479 S.E.2d 561, 568 (1996). The WVHRA imposes a duty upon the employer to assess the extent of the employee's disability and whether it can be accommodated. Id. at 59 syl. pt. 4. The West Virginia Supreme Court of Appeals has quoted with favor the following passage of the regulations implementing the Americans

11

with Disabilities Act, regarding the process by which accommodations are assessed:

> To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

Id. (quoting 29 C.F.R. § 1630.2(o)(3)).

The court observes that the analysis of the state law claim turns on questions of fact pertaining to the abilities of the plaintiff to perform the essential functions of his or her job with or without an accommodation and the employer's knowledge and conduct. None of these elements requires the court to interpret any term of a CBA. Thus, plaintiff's claim for failure to accommodate his disability exists independent of the CBA and is not completely preempted. See Lingle, 486 U.S. at 407. This conclusion is supported by the Fourth Circuit's decision in Martin Marietta v. Maryland Commission on Human Relations, 38 F.3d 1392, 1400-01 (4th Cir. 1994). Therein the court, considering whether a similar claim arising under Maryland law was completely preempted, held that a state anti-discrimination statute imposing a reasonable accommodation requirement "provides a nonnegotiable right to be free from handicap discrimination and

a right to a reasonable accommodation, each independent of the CBAs." Id.

The defendants nevertheless assert that plaintiff's claim for failure to accommodate his handicap requires interpretation of the CBA because Article 9(H) of the CBA sets out the procedures for conducting the interactive process which guides the discussions of the employee and the employer about the employee's disability and the availability of a reasonable accommodation.[2] (Resp. 7). Article 9(H) of the CBA explains how the employer must place an employee in a position when the employee has either a temporary or permanent capacity restriction. (CBA). As noted, the state law claim exists independent of the CBA, and a court considering such a claim must apply the state's rules for determining the adequacy of the interactive process.

---

[2] If it should be determined that the substantive terms of the CBA conflict with the requirements of the WVHRA, such a conclusion would not affect the court's determination that the plaintiff's claims are not completely preempted. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211-12 (1985)(noting that "§ 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law" and that "it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.").

13

Although the defendants' conduct, which may or may not have been guided by Article 9(H) of the CBA, may be discussed by the court in the course of determining whether such conduct satisfies the state's standards, the court would not need to interpret the terms of the CBA.  The Supreme Court specifically cautioned in <u>Lingle</u> that "mere parallelism between the facts and issues to be addressed under a state law claim and those to be addressed under § 301 does not render the state-law analysis dependent on the collective bargaining agreement."  <u>Lingle</u>, 486 U.S. at 408-09.  Consequently, even if the plaintiff could assert a claim under the CBA for failure to follow the procedures outlined therein, the mere possibility of such a claim would not render his state law claim completely preempted.

Turning to plaintiff's retaliation claims, to establish such a claim under the West Virginia Human Rights Act, a plaintiff must demonstrate that (1) he engaged in protected activity, (2) his employer was aware of the protected activity, (3) he subsequently suffered an adverse employment action, and (4), absent other evidence tending to establish a retaliatory motivation, the adverse employment action followed his protected activity within such period of time that the court can infer retaliatory motivation.  <u>Freeman v. Fayette County Bd. of Educ.</u>,

215 W. Va. 272, 277, 599 S.E.2d 695, 700 (2004).  The elements for retaliation are similar under the West Virginia Workers' Compensation Act, West Virginia Code § 23-5A-1.  Under this statute, a plaintiff must demonstrate "(1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act . . . ; and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee."  Powell v. Wyo. Cablevision, Inc., 184 W. Va. 700, 701, 403 S.E.2d 717, 718 (1991).

As noted by the Court in Lingle, addressing a retaliation claim under an Illinois law similar to the two West Virginia laws relied upon by the plaintiff, each of the elements of a retaliation claim requires a purely factual determination pertaining to the conduct of the employee and employer and the motive of the employer.  Lingle, 486 U.S. at 407.  None of the elements requires the court to interpret any term of the CBA.  See id.  Thus, the plaintiff's state retaliation claims are independent of the CBA and are not completely preempted.  See id.

The defendants contend that this case is analogous to McCormick v. AT&T Technologies, Inc., 934 F.2d 531 (4th Cir. 1991), wherein the Fourth Circuit held that the plaintiff's

15

claims of intentional infliction of emotional distress, negligent infliction of emotional distress, conversion, and negligence in the care of a bailment arising out of a search into McCormick's workplace locker were completely preempted by § 301 of the LMRA. (Resp. 8). However, as noted by the Fourth Circuit, the state law claims raised by McCormick each required proof of some sort of wrongful conduct that necessitated the interpretation of the CBA. McCormick, 934 F.2d at 535. "Such wrongfulness cannot be determined in a vacuum. Rather, '[t]he degree of care required . . . varies according to the circumstances of each case.'" Id. The court explained:

> The circumstances that must be considered in examining management's conduct are not merely factual, but contractual, and the collective bargaining agreement is a crucial component of these circumstances. Cleaning out a locker is not a matter of intrinsic moral import but a question of legal authority -- whether management had the lawful right to proceed as it did. The rightness or wrongness of the action has not been committed to the common law of tort, but to the legal arrangements embodied in a contractual agreement, in this case through collective bargaining. State tort claims are preempted where reference to a collective bargaining agreement is necessary to determine whether a "duty of care" exists or to define "the nature and scope of that duty, that is, whether, and to what extent, the [employer's] duty extended to the particular responsibilities alleged by [the employee] in h[is] complaint." Hechler, 481 U.S. at 862, 107 S.Ct. at 2168.

Id. at 536. In McCormick, the wrongfulness of the employer's actions, an element of each of McCormick's claims, could not be

determined without reference to the CBA because the CBA defined the scope of the duty owed by the employer to McCormick.  Id.  As earlier noted, the elements of plaintiff's claims in the present action do not require interpretation of the terms of the CBA because his claims exist independent of the terms of the CBA. This action, then, is plainly distinguishable from McCormick.

Additionally, defendants in their brief assert that McCormick suggests that "sometimes, based on the specific facts of the case, claims may be preempted even though other cases based on the same legal theory were not preempted."  (Resp. 8). According to the defendants, "[t]he difference is in the facts." (Id. at 9).  The Fourth Circuit at no point in its analysis makes such a broad statement, nor can it be inferred from the court's analysis.

### IV. Conclusion

Based upon the foregoing, the court ORDERS that plaintiff's motion to remand be, and it hereby is, granted.  The court further ORDERS that this action be, and it hereby is, remanded to the Circuit Court of Jackson County.

**The Clerk is directed to forward copies of this written opinion and order to all counsel of record.**

        DATED: May 22, 2008

        _____
        John T. Copenhaver, Jr.
        United States District Judge